# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MUWSA GREEN, | ) |
| Plaintiff, | ) Civil Action No. 2: 13-cv-01208 |
| v. | ) |
| | ) United States Magistrate Judge |
| DEBRA A. HAWKINBERRY, CCPM, | ) Cynthia Reed Eddy |
| BRIAN COLEMAN, FRANK LEWIS, and | ) |
| EFRAIN REISNER, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER[1]

Presently pending are the cross Motions for Summary Judgment filed by the parties (ECF Nos. 61 and 66). The issues have been fully briefed and the factual record has also been thoroughly developed. (ECF Nos. 67, 68, 69, 70, 72, 74, and 79). The motions are ripe for disposition. For the reasons that follow, Plaintiff's motion will be denied and Defendants' motion will be granted.

## Background

Plaintiff, Muwsa Green, *pro se*, is a state prisoner currently incarcerated at SCI-Somerset. Plaintiff alleges that from October 13, 2011 until November 24, 2014, while being housed in the RHU/SMU Unit of SCI-Fayette, Defendants denied him a kosher diet, in violation of his First Amendment rights to freely exercise his religion and in violation of the Religious Land Use and Institutionalized Person Act ("RLUIPA"), 42 U.S.C § 2000cc-1(a).

---

[1] The parties have consented to jurisdiction by the undersigned Magistrate Judge. *See* ECF Nos. 13 and 20.

On October 13, 2011, Plaintiff filed an Inmate's Request to Staff Member requesting to be signed up for a "Jewish Bag." (ECF. 61-2 at 21). On December 15, 2011, Green was informed by Reverend Frank Lewis, the Facility Chaplancy Program Director, that he "was not registered as a Jew[,] you must do so before getting the Kosher bag plus you need to study with the Rabbi at least six months before you apply." (*Id*.).

On December 19, 2011, Green filed an Inmate Request to Change Religious Form" and requested Jewish reading material "so I can learn more about my religion." (*Id*. at 20). On that same day, Green filed an Inmate Religious Accommodation Request Form requesting a religious diet. In evaluating the request, Reverend Lewis wrote to the Religious Accommodation Committee and explained that he received from Green the request for a Kosher Bag the same day that Green requested to become Jewish and that "[h]e knows nothing about the Jewish Faith other than what he has heard from other inmates in the SMU. I did not have the Rabbi interview him because I personally know inmate Green and at this time I cannot recommend him for this accommodation." (ECF No. 69-1 at 21).

The request for a Kosher diet was denied by the Religious Accommodation Committee and the denial was approved by the Deputy Secretary of the Department of Corrections ("DOC") due to a lack of a demonstrated sincerely held religious belief. (ECF. 61-2 at 21). On March 21, 2012, Green was notified by Reverend Lewis that his request for a Kosher Bag meal had been denied "due to a lack of a demonstration of a sincerely held belief." (*Id*. at 12). Green was advised that he could reapply "one year from this date [March 21, 2012] when you can clearly demonstrate the sincerity of your faith." (*Id.).*

2

In September 2012, Green filed Grievance 429697 stating that he did not receive fast bags for the Fast of Gedaliah or Yom Kippur. (*Id*. at 9). The grievance was denied and Green was informed by Defendant Debra A. Hawkinberry, CCPM, that

> [He] did not receive the fast bags because in the plan of action from Central Office it says, "Only inmates who identify with the broad Jewish faith who have demonstrated a sincerely held religious belief, are formally registered as Jewish and who are approved by the Jewish Chaplain, are permitted to take part in the observance of these holy days." On March 21, 2012, Inmate Green was denied a Kosher Diet due to a lack of a demonstrated sincerely held religious belief and therefore the Jewish Chaplain did not put him on the list to receive fast bags. He needs to talk with the Jewish Chaplain and become a student of the Jewish faith so that he may participate in the future.

(*Id.* at 2). On February 5, 2013, Green filed an Inmate's Request to Staff Member informing Reverend Lewis that he would be in administrative custody ("AC") on February 21, 2013, and questioned why he could not "receive the Jewish Fest (sic) on February 24, 2013." (*Id*. at 16). Reverend Lewis informed Green that he would be getting the fast bags but "will not get the Passover and Rosh [illegible] feast if you have had a Class #1 misconduct in six months." (*Id*.) In response, Green filed an Inmate's Request to Staff Member addressed to Debra Hawkinberry disputing that DC-ADM 819 stated that an inmate must be free of a Class 1 misconduct for six months in order to participate in the religious ceremonial meals. (*Id.* at 14). Hawkinberry responded that DC-ADM 819 does in fact state that "you must be free of a Class 1 misconduct for 6 months in order to participate in the ceremonial meal."[2] She also informed Green that the

---

[2]  DC-ADM 819, Section 1, E(1)(b), entitled "Ceremonial Meals" states in pertinent part as follows, "[i]nmate participants in ceremonial meals must be free of Class I misconducts (refer to Department policy DC-ADM 801, "Inmate Discipline") for a period of six months." DC-ADM 819, Religious Activities, Effective Date 2/1/2013.

Chaplain's "rounds are individual counseling, not a service." (*Id*.).

On March 1, 2013, Green filed his second request for a "Kosher Bag." Green stated that he had "been a Jewish believer for a year now." (Id. at 29). On May 13, 2013, Reverend Lewis informed Green that the Religious Accommodation Committee again had denied his "request for a Kosher Bag . . . because of your failure to demonstrate a sincerely held religious belief. You will not be able to apply for this meal again until May 17, 2014." (*Id*. at 24).

Green filed Grievance 462020 on May 30, 2013, regarding the denial of his second request for a Kosher Bag. Green stated, "I've have been practicing and participating in the Jewish religion, all activity for over two years now. This above denial constitute bias." (*Id*. at 6; ECF No. 32-2 at 6). On June 10, 2013, Green's grievance was denied for the following reasons:

> The first time that he applied for the Kosher bag, he was denied because he had just changed his religious preference to Jewish and knew absolutely nothing about the Jewish faith. Exactly one year later, he applied again. Since he is in the Restricted Housing Unit (RHU), he is unable to attend the Jewish services and the time he sees the Rabbi is limited. This has hindered the development of his understanding of his faith. He filed a grievance in 9/25/13 (sic) because he was not allowed to join in Jewish holidays because the Rabbi did not think that he had progressed enough in his studies. The Rabbi did not recommend him for the Kosher bag this time.
>
> Inmate Green does not have enough understanding of the Jewish faith to understand how much he does not know about it. It is his responsibility to work with the Rabbi to chart a course of study so that he will qualify in the two ways he can: his knowledge of the Jewish faith and the daily rituals that he must perform. When the Rabbi recommends him, the institution will as well.

(*Id*.; ECF No. 69-1. at 12). Green's appeal of that decision was denied on August 6, 2013. The Final Appeal Decision, written by Chief Grievance Officer Dorina Varner, explained the denial as follows:

4

> An investigation was conducted into your denial of the Kosher bag. According to Reverend Lewis, you submitted a religious accommodation request for a Kosher bag and were denied on 2/21/2012 because you lacked a demonstrated sincerely held religious belief. You resubmitted a religious accommodation request form on 5/17/2013 and it was denied. According to the FCPD you have only been Jewish for one year and the Rabbi does not recommend you for the Kosher bag at this time.

(ECF No. 61-2 at 26; ECF No. 32-2 at 2).

On July 12, 2013, Green's request to participate in the fast of 9th of Av on July 16, 2013 was approved. (ECF No. 61-2 at 15). The summary judgment record evidence also reflects that Green was approved to participate in the Fast of Gedaliah, which occurred on September 8, 2013 (*Id*. at 28), the 25-hour fast for Yom Kippur, which occurred from sunset on September 13, 2013 to sundown on September 14, 2013 (ECF No. 61-2 at 5), and the Fast of 9th Av on August 4, 2014 (*Id*. at 4). On August 6, 2014, Green informed Reverend Lewis that he never received the Fast of 9th Av on August 4, 2014. Reverend Lewis replied that "[t]he dietician said that everyone in the RHU & SMU took trays and didn't fast." (*Id*. at 7).

On September 18, 2014, Green filed his third Religious Accommodation Request Form for a kosher diet. Green stated that he "participate[s] in all the Jewish Holidays, and read Jewish materials, ask question when the Rabbi come around. And I am not trying to rebel against my religion by eating non-kosher foods." (ECF No. 61-2 at 25; ECF No. 47-1 at 3). On September 22, 2014, Green was informed by Reverend Lewis that he was listed on "all feasts." (ECF No. 61-2 at 17). The summary judgment record evidence reflects that on November 24, 2014, Green's request for a Kosher diet was approved. (ECF No. 69-1).

5

## Standard of Review

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986); *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Marino v. Indus. Crating Co*., 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323–24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *see also Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. Cty. of Allegheny,* 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*.,

475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322–23; *Jakimas v. Hoffman–La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

Notably, these summary judgment rules do not apply any differently where there are cross-motions pending. *Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008). As stated by the Court of Appeals for the Third Circuit, " '[c]ross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.' " *Id.* (quoting *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968)). A plaintiff-inmate bears the burden to show that a prison institution's policy or official practice has substantially burdened the practice of that inmate's religion. *Washington v. Klem*, 497 F.3d 272, 278 (3d Cir. 2007). For the purposes of RLUIPA, a substantial burden exists where: (1) a follower is forced to choose between following the precepts of his religion and forfeiting benefiting otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; or (2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs. *Id.* at 280. RLUIPA also does not confer any "privileged status on any particular religious sect, and singles out no bona fide faith for disadvantageous treatment." *Cutter*, 544 U.S. at 724.

**Discussion**

I.        First Amendment Claim

Green first claims that Defendants violated his First Amendment right to the free exercise of religion by failing to provide him with acceptable Kosher meals. The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. CONST. amend. I. Despite their incarceration, prisoners have a First Amendment right to practice their religion. *Bell v. Wolfish,* 441 U.S. 520, 544 (1979); *DeHart v. Horn,* 227 F.3d 47, 50 (3d Cir. 2000). However, these constitutional rights are limited by the fact of incarceration as well as valid penological objectives. See *O'Lane v. Shabazz*, 482 U.S. 342, 348 (1987) (free exercise rights are "necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or maintain prison security."). The evaluation of penological objectives in this context is "committed to the considered judgment of prison administrators," and to ensure appropriate deference to those judgments, courts reviewed challenged prison regulations under the overall reasonableness test of *Turner v. Safley*, 482 U.S. 78 (1987).

The *Turner* reasonableness analysis focuses on four factors: (i) whether there is a rational connection between the challenged prison regulation and the legitimate governmental interest; (ii) whether there are alternative means of exercising the religious rights that remain open to the plaintiff; (iii) what impact will accommodation of the asserted constitutional right have on the prison officials, general prison resources and other inmates; and (iv) whether there are any ready available alternatives for furthering the governmental interest. *Turner*, 482 U.S. at 89-90,

reaffirmed in *Overton v. Bazzetta,* 59 U.S. 126, 131 (2003). *See also Beard v. Banks*, 548 U.S. 521, 535 (2006) (plurality opinion).

The *Turner* analysis is, however, conducted as a second step only; as such, the analysis is warranted if the allegations made by plaintiff demonstrate that a constitutionally protected interest is at stake. *DeHart v. Horn*, 227 F.3d 47, 52 (3d Cir. 2000). "The mere assertion of a religious belief [by a prisoner] does not automatically trigger First Amendment protections . . . [O]nly those beliefs which are sincerely held; and religious in nature are entitled to constitutional protection." *Id.* (quoting *Africa v. Com. of PA*, 662 F.2d 1025, 1029-30 (3d Cir. 1981), *cert. denied,* 456 U.S. 908 (1982)). If either of these two requirements is not satisfied, the Court need not conduct a *Turner* analysis. *Id*. at 51.

Green unquestionably satisfies the second requirement. He professes to be Jewish and to follow the Jewish faith. It is the first requirement, whether his religious beliefs were sincerely held during the time in question, which is at issue in this litigation. "[I]f a prisoner's request for a particular diet is not the result of sincerely held religious beliefs, the First Amendment imposes no obligation on the prison to honor that request." *Id*. at 52.

Prison officials are allowed to make inquiries regarding the sincerity and religious nature of an inmate's belief when the inmate requests special treatment. *Id*. at 52 n.3. "If the request is not a constituent part of a larger pattern of religious observance on the part of the inmate . . . the asserted religious basis may be rejected as pretext." *Id.* Prison officials must be given some leeway in terms of time to investigate the sincerity of an inmate's religious beliefs.

It is clear from the summary judgment record that Defendants took adequate steps to investigate the sincerity of Green's religious beliefs. Certainly Green initiated the process of

requesting a religious accommodation by his first request on December 19, 2011. Defendants questioned the sincerity of Green's first request as it was received on the same day as Green notified DOC that he was changing his religious preference. DC-ADM 819, Section 4(e), Religious Accommodations, specifically provides that "when reviewing the inmate's request, the following issues shall be considered: . . . (5) any evidence that indicates a lack of sincerity on the part of the inmate (e.g., inmate does not attend faith group services, <u>lacks a general understanding of major faith teachings, lacks a recommendation from the Faith Group Leader</u>, etc); . . . .) Green's second request was not approved based on the recommendation of the Rabbi who did not believe that Green had enough understanding of the Jewish Faith to participate in Jewish holidays. Notably, Green's development of his understanding of his faith was hindered somewhat because he was in the RHU where he was unable to attend the Jewish services and had limited contact with the Rabbi.

Green's third request for a Kosher diet was approved after he had demonstrated to the Rabbi and his Faith Group Leader that his beliefs were sincere, that he was participating in all the Jewish holidays, requesting and reading Jewish material, and asking questions of the Rabbi

Under these circumstances, and based on the summary judgment record evidence, the Court cannot find fault with the decisions and actions of Defendants. Defendants Coleman and Hawkinberry appropriately relied upon the recommendation of the Faith Group Leader, Reverend Lewis, Rabbi Reisner, and the Religious Accommodation Committee regarding the sincerety of Plaintiff's religious beliefs.

II. RLUIPA Claim

RLUIPA prohibits the government from imposing a substantial burden on any religious exercise of a person residing in or confined to an institution unless the burden furthers "a compelling governmental interest," and does so by "the least restrictive means." 42 U.S.C. § 2.

RLUIPA, however, does not allow for the recovery of money damages. See *Sharp v. Johnson*, 669 F.3d 144, 154 (3d Cir. 2012) ("RLUIPA does not permit an action against defendants in their individual capacities . . . [t]hus RLUIPA cannot impose direct liability on Defendants.") *See also Laskaris v. Thornbaugh*, 661 F.2d 23, 25-26 (3d Cir. 1981) (explaining that the Eleventh Amendment bars a suit for damages against state officials in their official capacities). Therefore, the only relief potentially available to Green for his RLUIPA claims is injunctive or declaratory, but to the extent that Green seeks that relief against defendants at SCI-Fayette, his claims are moot because he was transferred to SCI-Somerset.[3] He no longer presents a live case or controversy for injunctive relief regarding the policies or practices at SCI-Fayette because an injunction where he is no longer imprisoned would not provide him meaningful relief. *See Abdul-Akbar v. Watson*, 4 F.3d 195, 207-07 (3d Cir. 1993). On this record, any future incarceration of Green at SCI-Fayette, is speculative, so his case does not present an issue capable of repetition, yet evading review regarding the relief against the SCI-Fayette defendants. *See id*.

---

[3] After the disposition of the motion to dismiss, the remaining defendants are all employed or affiliated with SCI-Fayette: Brian D. Coleman, Superintendent; Debra A. Hawkinberry, SCI Fayette Facility CCPM; Frank Lewis, SCI-Fayette "facility reverend;" and Efrain Reisner, SCI-Fayette "facility Rabbi."

11

Accordingly, for all these reasons, summary judgment is granted to Defendants on Plaintiff's RLUIPA claim.

**Conclusion**

For the above reasons, the Motion for Summary Judgment filed by Plaintiff, Muwsa Green, will be denied, and the Motion for Summary Judgment filed by Defendants will be granted. An appropriate order follows.

**ORDER OF COURT**

**AND NOW,** this 14th day of March, 2016, for the foregoing reasons, the Motion for Summary Judgment filed by Plaintiff, Muwsa Green, is **DENIED** and the Motion for Summary Judgment filed by Defendants is **GRANTED**.

The Clerk of Court shall docket this case closed.

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Plaintiff has thirty (30) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure.

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: MUWSA GREEN
HV-5362
SCI Somerset
1600 Walters Mill Road
Somerset, PA 15510
(via U.S. First Class Mail)

Sandra A. Kozlowski
Pennsylvania Office of Attorney General
(via CM/ECF electronic notification)